[Cite as *Woods v. Sharkin*, 2022-Ohio-1752.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| DOUG WOODS, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 110567 |
| v. | : | |
| BRIAN W. SHARKIN, ET AL., | : | |
| Defendants-Appellees. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART; AND
REMANDED
**RELEASED AND JOURNALIZED:** May 26, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-920913

### *Appearances:*

Doug Woods, *pro se*.

Gallagher & Sharp, LLP, Timothy T. Brick, and Maia E.
Jerin, *for appellee* Brian W. Sharkin.

Baker & Hostetler, LLP, Michael K. Farrell, and Daniel M.
Kavoras, *for appellees* Scripps Media, Inc., d.b.a. WEWS-
TV, the E.W. Scripps Company, and Joe Pagonakis.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Doug Woods ("Woods"), appeals the trial court's decision dismissing his complaint. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.    Factual and Procedural Background

{¶ 2} On September 4, 2019, Woods filed a civil complaint against 22 named defendants raising 17 causes of action. In his complaint and the attached incorporated documents, he asserted the following facts and allegations.

{¶ 3} Woods owns several single-family residential properties in the greater Cleveland area under the business name "What a Lovely Home." At times, he has filed evictions proceedings, some of which resulted in money judgments against his tenants. Specific to this case, Woods was granted separate evictions and/or civil judgments in the Garfield Heights Municipal Court against former tenants Monique Willis ("Willis"), Erin Webb ("Webb"), Arliea Marshall a.k.a. McBryde ("Marshall"), Latanya Tyes ("Tyes"), Lashawn Deener ("Deener"), Dominque Jeter ("Jeter"), Jacqueline Johnson ("Johnson"), Mary Lamar ("Lamar"), and Andromeda Hicks ("Hicks") (collectively "former tenants").

{¶ 4} Woods alleged that because of the eviction proceedings, Johnson conspired with Martin Greer ("Greer"), who damaged his property and intimidated and threatened him regarding the return of Johnson's security deposit. He further alleged that Greer caused damage to a vehicle. Woods alleged that these actions occurred from September 2017 until November 2018.

{¶ 5} Woods alleged that in February 2018, Tyes caused property damage to one of his homes in Maple Heights. As a result, Woods obtained an eviction and money judgment against her for the damage and for a bad check that she issued. According to Woods, Tyes retaliated against him for the eviction by conspiring with an unknown male (referred to in the complaint as "Unknown Father of Children of Latanya Tyes" or "UFC") to intimidate him by threatening him with physical harm. Woods further alleged that UFC caused damage to a vehicle.

{¶ 6} In July 2017, Woods commenced eviction proceedings against Willis, who hired attorney Brian W. Sharkin ("Sharkin") to represent her.[1] Woods alleged that Willis and Sharkin made defamatory statements about him insinuating that he was engaging in unlawful business practices. Woods alleged that Sharkin gathered the former tenants and contacted Joe Pagonakis ("Pagonakis"), a reporter with News Channel 5, to create and broadcast a story to further this "campaign of harassment."

{¶ 7} On September 5, 2018, News Channel 5 broadcast and published a news story (hereinafter "news report") regarding the rise in eviction proceedings in Cuyahoga County. Pagonakis reported the story and interviewed Webb, Tyes, and Marshall regarding their experiences during the eviction process, and offering

---

[1] In 2019, Willis obtained new counsel, attorney Jeffrey Froude ("Froude"). Woods alleged that Willis and Froude acted without authorization in taking photographs of his rental property. According to Woods, both Willis and Froude made defamatory statements about him to the tenants, causing the tenants to stop paying rent and performing under the lease.

advice to future tenants. During the interview, Pagonakis stated that the three women rented the same Maple Heights home from Woods, who subsequently evicted them from the home. Pagonakis also interviewed Garfield Heights Municipal Court Judge Deborah Nicastro, who opined that tenants lack education on their rights and responsibilities when entering into lease contracts. Pagonakis also interviewed Woods, who explained the difficulties in being a landlord, especially when tenants do not abide by the terms of their lease — including not paying rent and the water bill — and allowing unauthorized individuals and pets to live in the homes. Woods alleged in his complaint that this news story contained false and inflammatory statements that placed him in a false light. Woods attached to his complaint and incorporated by reference a printout of the news story subsequently posted on September 6, 2018, by Pagonakis on the News Channel 5 website, as well as a "transcribed" version of the televised news story.[2]

**{¶ 8}** Woods alleged that following this news story, Webb, Marshall, Tyes, Deener, and Lamar colluded and conspired through the social media platforms of Facebook and Twitter to gather current and former tenants of Woods in an effort to intentionally and maliciously defame him. This effort, according to Woods, included

---

[2] The transcript attached to the complaint is a chart prepared by a notary public denoting what each person said during the news broadcast. Although the media defendants in their motion to dismiss reference a website where the news broadcast can be located on the internet, a copy of the actual televised news broadcast that was aired has not been provided to this court. None of the parties have raised any objection to the "transcript" or the reference to the news story contained on the website.

placing flyers titled "Public Service Announcement" on Woods's rental properties and on parked cars in the vicinity. According to Woods, the flyers identified him and his business and contained the following statements: "[u]nfair and horrible landlords who evict people for no reason" and "[i]nstead of doing business with them, you should view them the same way you do pedophiles, drug dealers, slumlords, baby killers, or someone with a contagious disease. Stay away from them and do not rent from them!!! #Slumlords, #Whatauglyhome, #Followus."

{¶ 9} Woods further alleged that in October and November 2018, Sharkin and Willis orchestrated additional social media attacks through the use of Twitter accounts for the purposes of intentionally and maliciously defaming his character and reputation. Woods alleged that the Twitter posts were made by the former tenants and discussed their "great job" on the Public Service Announcement and sought to "come up with some other things to say" about Woods's rental properties. The responses included that Woods is a "crook," "thief," "lowlife corrupt criminal with shady business practices," Woods's houses have "rats and roaches," "black mold," "bed bugs," and "will burn down from bad electrical." In support of his allegations, Woods attached to his complaint and incorporated by reference a printout of various Twitter feeds and conversations making allegations about Woods and his rental properties, which, according to Woods, were untrue.

{¶ 10} Woods alleged that John Clos ("Clos") also made defamatory statements about one of his rental properties when he told one of Woods's tenants that when Woods purchased the home in which she was living, the home contained

mold. According to Woods, Clos told the tenant that instead of remediating the mold, Woods hired "thugs to install a new roof on the house to cover it up." He alleged that these statements caused the tenant to request a Section 8 inspection and "notify [him] of her need to break the lease." According to Woods, the inspection did not reveal any mold issues.

{¶ 11} Woods alleged that from February 2018 until June 2018, Webb made unwelcome demands "that [Woods] engage in intimate conduct where submission to the request or demand, either implicitly or explicitly, was made a condition related to her ongoing rental of the" property. He alleged that her conduct created a "sexually harassing housing environment," in violation of the Fair Housing Act.

{¶ 12} In April 2019, Woods initiated garnishment proceedings against Webb. He alleged that during this proceeding, Webb accused him of engaging in fraudulent activity, insinuated that they had a sexual and romantic relationship, and verbally called Woods "the devil" in the Garfield Heights Municipal Courthouse.

{¶ 13} According to Woods, Webb subsequently published false and inflammatory statements about him with the Better Business Bureau. He alleged that Webb published these reviews under her own name, but also under the fictitious names of "Domioneice Espay" and "Amber Boulevardez." In support, he attached to his complaint and incorporated by reference a printout of the reviews found on the Better Business Bureau regarding Woods and What a Lovely Home.

{¶ 14} Woods further alleged that based on the conduct of all of the defendants, RC Investments and David Paisley ("Paisley") rescinded or breached

contracts for the purchase of real and personal property. He alleged that he suffered monetary damages for the amounts he expended in accordance with the terms of the contracts. Specifically, he averred that he made improvements and repairs to the real property. In support of these allegations, he attached to his complaint and incorporated by reference the contracts he entered into with RC Investments and Paisley.

{¶ 15} Woods alleged in his complaint that the aforementioned conduct by all defendants caused him significant physical, emotional, psychological, and financial harm, interfered with current and prospective business relationships, and infringed on his constitutional and statutory rights. He requested monetary relief from the defendants, jointly and severally, a temporary restraining order and injunctive relief, and any other relief the court deemed necessary.

{¶ 16} On September 24, 2019, Clos filed an answer denying the allegations and setting forth various affirmative defenses. On February 4, 2020, he moved for judgment on the pleadings.

{¶ 17} On November 8, 2019, Sharkin filed an answer and counterclaim. The counterclaim requested the trial court to declare Woods a vexatious litigator pursuant to R.C. 2323.52(A)(2). Sharkin subsequently moved for judgment on the pleadings regarding Woods's complaint.

{¶ 18} On November 11, 2019, Pagonakis, Scripps Media, Inc., d.b.a. WEWS-TV, and E.W. Scripps (collectively "media defendants") moved to dismiss Woods's complaint pursuant to Civ.R. 12(B)(6).

{¶ **19**} On January 31, 2020, Froude moved for judgment on the pleadings pursuant to Civ.R. 12(C). And on February 6, 2020, Deener moved to dismiss Woods's complaint pursuant to Civ.R. 12(B)(6).

{¶ **20**} Woods moved for default judgment against the defendants who were served with his complaint but did not file an answer or otherwise plead — Webb, Curvvy Nurse,[3] Mashall, Lamar, Tyes, Jeter, Hicks, Greer, Espay, Boulevardez, Paisley, RC Investments, and Johnson (collectively "non-answering defendants"). He also moved to dismiss Sharkin's counterclaim.

{¶ **21**} On March 2, 2021, the trial court conducted a combined oral hearing on the various motions and heard arguments from the parties. At the conclusion of the hearing, the trial court ruled on each motion, providing its justification and explanation for its decision. Subsequently, the trial court issued a written journal entry memorializing its ruling but without any detailed explanation. Succinctly, the trial court (1) granted the media defendants' motion to dismiss in its entirety; (2) granted Deener's motion to dismiss; (3) granted Sharkin's motion for judgment on the pleadings; (4) granted Froude's motion for judgment on the pleadings; and (5) granted Clos's motion for judgment on the pleadings.

{¶ **22**} The trial court acknowledged that certain defendants who were properly served with the complaint failed to file an answer or otherwise file any responsive pleading. The trial court denied Woods's motion for default judgment,

---

[3] Woods alleges that "Curvvy Nurse" is a trade name registered in Ohio by Webb.

however, and further, sua sponte found that Woods's complaint failed to state a claim against those non-answering defendants. The trial court therefore dismissed Woods's complaint against those defendants. Finally, the trial court denied Woods's motion to dismiss Sharkin's counterclaim.

{¶ 23} Sharkin's counterclaim remained pending and the court established a discovery schedule. In March 2021, the court conducted a hearing on various motions pertaining to the counterclaim, including Woods's motions to strike, for sanctions, and for summary judgment; and Sharkin's motion for summary judgment. The trial court partially granted Woods's motion to strike, but denied all other motions, including the cross-motions for summary judgment.

{¶ 24} On May 6, 2021, following a telephone conference advising the court of settlement, Sharkin filed a notice of dismissal of his counterclaim, attaching the settlement agreement and release. Pursuant to the agreement, any and all claims regarding this case and another case pending in Garfield Heights Municipal Court between Woods, Sharkin, Froude, and Willis, were settled. The agreement expressly stated that the agreement was "intended to prohibit any and all future litigation, insurance claims, and appeals." With the filing of the dismissal, all prior interlocutory orders became final and appealable.

{¶ 25} Woods now appeals, raising two assignments of error.[4]

---

[4] Woods raised three assignments of error in his appellate brief, but subsequently withdrew his second assignment of error when he voluntarily dismissed appellees Froude, Willis, and Sharkin from the appeal.

## II.   Dispositive Motions and Counterclaims

{¶ 26} In his first assignment of error, Woods contends that

[t]he trial court's decision to grant the dispositive motions and dismiss the [c]omplaint against both [a]ppellees who had defended and those who failed to defend[,] as well as allow the [c]ounterclaim to proceed, was prejudicial, erroneous, improper, unlawful[,] and an abuse of discretion.

Under this assignment of error, Woods challenges the trial court's decision that (1) denied his motion for default judgment against the non-answering defendants, and sua sponte dismissed his complaint against those defendants pursuant to Civ.R. 12(B)(6); (2) granted the media defendants' motion to dismiss pursuant to Civ.R. 12(B)(6); (3) granted Clos's untimely motion for judgment on the pleadings; (4) granted Deener's motion for judgment on the pleadings; (5) granted Sharkin's motion for judgment on the pleadings; (6) granted Froude's motion for judgment on the pleadings; and (7) denied his motion for summary judgment on Sharkin's counterclaim.

{¶ 27} At the outset, we note that Woods entered into a settlement agreement with Sharkin, Froude, and Willis.  The agreement expressly stated that the parties were waiving all claims against each other regarding this case, including any future litigation and "appeals."  As a result, Sharkin, Froude, and Willis requested that this court sanction Woods for filing a frivolous appeal against them.  Froude and Willis withdrew their request after Woods dismissed the appeal against them.  Woods also dismissed the appeal against Sharkin, but Sharkin's request for sanctions remains pending and will be addressed by this court in a subsequent journal entry.  Woods

contends in his brief in opposition to Sharkin's motion for sanctions that the settlement agreement filed with the court is incorrect. We note, however, that Woods has not filed any motion with the trial court seeking to vacate or set aside the settlement agreement. Accordingly, any argument raised on appeal challenging any ruling regarding appellees Sharkin, Froude, and Willis will not be considered.

### A. Standard of Review — Civ.R. 12(B)(6) and 12(C)

{¶ 28} This court recently set forth the appropriate Civ.R. 12(B)(6) standard of review in *Hersh v. Grumer*, 2021-Ohio-2582, 176 N.E.3d 1135, ¶ 5 (8th Dist.):

> We review rulings on Civ.R. 12(B)(6) motions to dismiss under a de novo standard. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *Graham v. Lakewood*, [2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.)] quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2018-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

Therefore, "[a]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991). Additionally, a court may not dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail. *Bono v. McCutheon*, 159 Ohio App.3d 571, 2005-Ohio 299, 824 N.E.2d 1013, ¶ 8 (2d Dist.).

**{¶ 29}** Appellate review of rulings on Civ.R. 12(C) motions for judgment on the pleadings operates "under the same principles that this court would apply in analyzing a motion to dismiss pursuant to Civ.R. 12(B)(6)." *Jordan v. Giant Eagle Supermarket*, 8th Dist. Cuyahoga No. 109304, 2020-Ohio-5622, ¶ 21.

**{¶ 30}** When reviewing the sufficiency of a complaint, this court is mindful that Civ.R. 8(A) provides for notice pleading, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the party claims to be entitled." Even under Ohio's liberal pleading rules and notice-pleading standard, however, a cause of action must be factually supported and courts need not accept bare assertions of legal conclusions. *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, 6 N.E.3d 106, ¶ 28 (8th Dist.); *Harper v. Weltman, Weinberg & Reis Co., L.P.A.*, 8th Dist. Cuyahoga No. 107439, 2019-Ohio-3093, ¶ 33. Additionally, the court need not accept as true any unsupported and conclusory legal propositions advanced in the complaint. *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 7 (10th Dist.).

**{¶ 31}** When reviewing a Civ.R. 12(B)(6) motion, "[t]he factual allegations of the complaint and items properly incorporated therein must be accepted as true." *Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 280, 649 N.E.2d 182 (1995) (in a Civ.R. 12(B)(6) review, the court considered the news column and press release that were "attached to and incorporated by reference to her complaint"). Here, no

objection has been raised regarding the consideration of any documents attached to Woods's complaint.

{¶ 32} Woods's complaint sets forth 17 causes of action and names 22 defendants. For clarity, this court will address each dispositive motion separately.

## B. Defendants Who Failed to Answer or Otherwise Plead

{¶ 33} Woods moved for default judgment against Webb, Curvvy Nurse, Marshall, Lamar, Tyes, Jeter, Hicks, Greer, Espay, Boulevardez, Paisley, RC Investments, and Johnson,[5] claiming that pursuant to Civ.R. 55, he was entitled to a default judgment against these defendants who were served with the complaint but failed to plead or otherwise defend.

{¶ 34} As an initial matter, our review of the docket reveals that defendants Boulevardez and "Unknown Father of Children of Latanya Tyes" ("UFC") were not served with the complaint as required by Civ.R. 3(A) (service required within one year to commence civil action). Woods filed his complaint on September 4, 2019, and at the time of the hearing on March 2, 2021, neither defendant had been served with the complaint. Accordingly, it was proper for the trial court to not enter a default judgment against these two defendants and to dismiss the complaint against them.

---

[5] Although Woods also moved for default judgment against Willis, she will not be included in our discussion of this issue. As previously explained, Willis and Woods entered into a settlement agreement; accordingly, any discussion or resolution of this assignment of error does not pertain to Willis.

{¶ 35} Regarding the remaining defendants, the record shows that these defendants were either served by certified mail or regular U.S. Mail and have failed to file an answer or otherwise defend the complaint against them. Accordingly, Woods contends that the trial court abused its discretion in denying his motion for default and further erred in sua sponte dismissing the complaint pursuant to Civ.R. 12(B)(6).

{¶ 36} Civ.R. 55 governs default judgments and provides that when a party against whom judgment is sought fails to plead or otherwise defend, the opposing party may apply to the court for a default judgment. Civ.R. 55(A). A trial court's decision "to grant or deny a motion for default judgment" is reviewed under an abuse of discretion standard. *Bank of Am., N.A. v. Malone*, 10th Dist. Franklin No. 11AP-860, 2012-Ohio-3585, ¶ 18. An abuse of discretion is not a mere error of law or judgment; rather, it connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 37} At the March 2, 2021 hearing, the trial court acknowledged that the non-answering defendants were properly served, but noted that Civ.R. 55 affords the trial court discretion and default may not be appropriate where the complaint fails to state a claim upon which relief can be granted. The court exercised its discretion and denied Woods's motion for default judgment based on "the facts of this case where plaintiff has filed suit against several former tenants, many of whom are transient and difficult to locate." The court additionally concluded that Woods's

complaint failed to state a claim upon which relief could be granted; thus, it sua sponte dismissed Woods's complaint against these defendants.

{¶ 38} We find that the trial court acted within its discretion in denying Woods's motion for default but erred in dismissing the complaint pursuant to Civ.R. 12(B)(6) against the non-answering defendants.

{¶ 39} Generally, a court may dismiss a complaint on its own motion pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief may be granted, only after the parties are given notice of the court's intention to dismiss and an opportunity to respond. *Prosen v. Dimora*, 79 Ohio App.3d 120, 124, 606 N.E.2d 1050 (8th Dist.1992). The only instances of when a sua sponte dismissal of complaint without notice is appropriate is when the complaint is frivolous or the plaintiff cannot succeed on the facts stated in the complaint. *State ex rel. Peeples v. Anderson*, 73 Ohio St.3d 559, 560, 653 N.E.2d 371 (1995).[6]

{¶ 40} In this case, the trial court did not give Woods notice that it could sua sponte dismiss his complaint against the non-answering defendants at the default hearing. Moreover, after the trial court denied Woods's motion for default, it did not give Woods any opportunity to respond to the trial court's consideration of dismissing the complaint under Civ.R. 12(B)(6). The trial court admitted that sua sponte dismissal is "appropriate in some rare cases" but found that Woods's complaint warranted dismissal. It explained:

---

[6] This proposition of law has primarily been applied to writs or other original actions filed in reviewing courts.

This is such a case because the complaint lacks merit and plaintiff obviously cannot prevail on the facts alleged in the complaint. For the reasons already stated on the record with respect to allegations against the other defendants, plaintiff['s] complaint against his former tenants fails to state any claim upon which relief may be granted and is therefore without merit and for these reason[s] the court dismisses the complaint as to the remaining defendants even though they may be technically in default.

(Tr. 35.)

**{¶ 41}** Sua sponte dismissals "'prejudice appellants as they deny any opportunity to respond to the alleged insufficiencies.'" *MBNA Am. Bank, N.A. v. Canfora*, 9th Dist. Summit. No. 23588, 2007-Ohio-4137 ¶ 14, quoting *McMullian v. Borean*, 6th Dist. Ottawa No. OT-05-017, 2006-Ohio-861, ¶ 16. "'[A]ppellate review is frustrated when a trial court offers no explanation or reasoning for a sua sponte dismissal.'" *Id.*, quoting *McMullian* at *id.*

**{¶ 42}** Here, although the trial court offered some basis for its dismissal, our review of the complaint reveals that the allegations against the non-answering defendants and the other defendants who filed dispositive motions are not the same. Even though the allegations may arise out of the same circumstances and fall under the same causes of actions, the allegations against the non-answering defendants are separate and distinct. Because of this, the trial court's reliance on its reasoning as applied to the other answering defendants as its basis for dismissing the complaint against the non-answering defendants was in error. For example, Woods alleges that the non-answering defendants made defamatory statements about him through the use of flyers and social media — conduct not alleged against the media

defendants. Additionally, some other causes of action were separate and distinct from those against the answering defendants. For example, causes of action 9 and 10 (civil assault and property damage) only pertain to UFC and Greer; cause of action 13 (quid pro quo and hostile environment harassment and violation of R.C. 4112.02(H)(4)(12)) only pertains to Webb; and cause of action 16 (breach of contract) only pertains to defendants RC Investments and Paisley, who are not alleged to be Woods's former tenants. Accordingly, the trial court could not use its rationale and justifications regarding the other defendants to support its decision to dismiss the complaint against the remaining properly served, but non-answering defendants.

{¶ 43} For this reason, the trial court erred in sua sponte dismissing Woods's complaint against the non-answering defendants pursuant to Civ.R. 12(B)(6). The assignment of error as it pertains to these defendants is sustained; the trial court's decision is reversed in this respect. The decision to dismiss the complaint against Boulevardez and UFC, however, is affirmed.

### C. Media Defendants — Civ.R. 12(B)(6)

{¶ 44} Woods named the media defendants in 13 causes of action — defamation per se (cause of action 1); defamation per quod (cause of action 2); false light invasion of privacy (cause of action 3); invasion of privacy (wrongful intrusion upon seclusion) (cause of action 4); tortious interference with a business relationship (cause of action 5); tortious interference with a contractual relationship (cause of action 6); private nuisance (cause of action 7); trespass and civil conspiracy

to commit trespass (cause of action 8); negligence (cause of action 11); fraud/fraudulent concealment or negligent misrepresentation (cause of action 12); intentional infliction of emotional distress (cause of action 14); civil conspiracy (cause of action 15); and injunctive relief (cause of action 17).

{¶ 45} The trial court granted the media defendants' Civ.R. 12(B)(6) motion to dismiss, finding at the hearing that Woods's defamation claims fail to state a claim because the news report, viewed as a whole, "was substantially true and to the extent that any statements made during the course of the reporting were untrue such statements do not rise to the level of being defamatory." The court further found that the statements made during the report "came in the context of reasonably balanced reporting" and the statements were not "actionable as a matter of law." The court noted that any of the factual inaccuracies noted by Woods did not change the overall story or reporting. Finally, the trial court determined that implied statements — camera angles, tone, lighting — are not actionable.

{¶ 46} Regarding Woods's remaining claims, the trial court dismissed those causes of action because the allegations in the complaint were conclusory or insufficient as a matter of law; the causes of action were not identifiable separate causes of action; and Woods failed to plead actual malice. We find no error in the trial court's decision.

### 1. Causes of Action 1 and 2 — Defamation

{¶ 47} "In Ohio, defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's

reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 7, 651 N.E.2d 1283 (1995).

{¶ 48} "A defamation claim against a news organization requires proof that (1) the organization made a false statement, (2) the statement was defamatory, (3) the organization published the statement, (4) the plaintiff was harmed as a proximate result of the publication, and (5) the organization acted with the requisite degree of fault in publishing the statement." *Anderson v. WBNS-TV, Inc.*, 158 Ohio St.3d 307, 2019-Ohio-5196, 141 N.E.3d 192, ¶ 9, citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77.

{¶ 49} A court decides "'as a matter of law whether certain statements alleged to be defamatory are actionable or not.'" *Leadscope* at ¶ 78, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983).

{¶ 50} "'In determining whether a statement is defamatory as a matter of law, a court must review * * * the totality of the circumstances' and by 'read[ing] the statement[] * * * in the context of the entire [publication] determine whether a [reasonable] reader would interpret [it] as defamatory.'" (Brackets sic.) *Leadscope* at ¶ 79, quoting *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-09074, 2010-Ohio-3963, ¶ 12, citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 253, 496

N.E.2d 699 (1986), and *Mendise v. Plain Dealer Publishing Co.*, 69 Ohio App.3d 721, 726, 591 N.E.2d 789 (8th Dist.1990).

{¶ 51} "'[T]he words of the publication should not be considered in isolation, but rather within the context of the entire [publication] and the thoughts that the [publication] through its structural implications and connotations is calculated to convey to the reader to whom it is addressed.'" *Leadscope*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, at ¶ 79, quoting *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d 825, 840 (6th Cir.1988), *aff'd*, 491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989).

{¶ 52} Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, we find that Woods's defamation claims as alleged in causes of action 1 and 2 fail as a matter of law because: (1) the news broadcast and subsequently published article contained balanced reporting; (2) when viewed as a whole, the news report was substantially true or nondefamatory; and (3) Ohio does not recognize defamation by implication.

### a. *Leadscope* — Balanced Reporting

{¶ 53} The Ohio Supreme Court held in *Leadscope* that news reports summarizing legal disputes between two parties are not actionable as a matter of law when the report includes statements from both parties along with a summary of the litigation. *Leadscope* at ¶ 81-86. In *Leadscope*, the court overturned a jury verdict, concluding that despite the jury finding that the defendant made false statements to the press, the news report deprived the defendant's statement of its

defamatory meaning because the publication reported both sides of the litigated controversy, including quotes from both parties. *Id.* at ¶ 82-83. The court explained, "the average reader would learn that the [lawsuit] had been filed and could easily understand the gist of the claims and defenses from the brief quotes that the parties provided regarding their opinions about the lawsuit." *Id.* at ¶ 84. Thus, "[c]onsidering the article as a whole and the fact that the article contained a true and accurate summary of the legal proceedings at the time, we hold that the statements in the article are, as a matter of law, not defamatory." *Id.* at ¶ 86.

{¶ 54} In this case, the news broadcast and publication, reviewed as a whole, offsets any potentially defamatory content because it provided the former tenants and Woods an opportunity to tell their sides of the story in the context of a prior litigated dispute. In the news report, the former tenants admitted that they were late in paying rent, and then provided their experience going through the eviction process. Woods offered his perspective about the difficulties of being a landlord. The news report also offered insight by Judge Nicastro regarding tenants' lack of education and awareness when entering into a lease agreement. Accordingly, we conclude that the statements were made in the context of an accurate and balanced report of the positions of both sides of the dispute and thus, the statements are either nondefamatory or their alleged defamatory meaning was removed by the report. Because we find the statements not actionable, Woods's causes of action for defamation per se and per quod were properly dismissed pursuant to Civ.R. 12(B)(6).

{¶ 55} Moreover, we find that the news report, on its face, is substantially true based on the allegations and admissions contained in the complaint. "Truth is an absolute defense against a claim of defamation." *Shifflet v. Thomson Newspapers (Ohio), Inc.*, 69 Ohio St.2d 179, 183, 431 N.E.2d 1014 (1982). Under the substantial truth doctrine, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

{¶ 56} Woods alleged in the complaint that he evicted Webb, Tyes, and Marshall, the women featured in the news broadcast. This fact was truthfully reported in the news report. Additionally, he alleged that he sought and received judgments against them for damage to his Maple Heights home. This fact was also truthfully reported in the news report. Woods's allegations for defamation concern the news report's word choices and overall perspective, and he asserts that certain details are false. However, our review of the news report reveals that none of his allegations identify any factual inaccuracies about him that render the news report materially false and defamatory.

{¶ 57} Woods identified factual inaccuracies in the news report that he alleged render the report defamatory and actionable — (1) claims asserted by the tenants that contradict the judgment rendered against them; (2) a statement by Pagonakis that courts suggest "better landlord-tenant education," rather than only "tenant education and awareness" as stated by Judge Nicastro; (3) a statement that Woods would consider sitting down with the tenants featured in the report and

negotiating a compromise; and (4) falsely inferring or attributing to him the statement that "the growing number of evictions are caused by a tough economy." None of those inaccuracies, however, change the overall "gist" of the news report, which informed the average reader or viewer that evictions are on the rise and that courts view it as a serious problem, and then further provided perspectives from both a landlord and tenants about the eviction process. This balanced reporting, along with Woods admitting in his complaint the underlying facts that he evicted and obtained judgments against the three tenants, renders the news report substantially true. *See Shifflet*, 69 Ohio St.2d at 187, 431 N.E.2d 1014 (truth established by the express and implicit allegations in the complaint).

**{¶ 58}** Woods alleged that the news broadcast used tone and "darkened images and dramatic music" to imply "illegal and immoral activity." But giving "an inaccurate slant" to an otherwise accurate report does not make it actionable because, as the trial court recognized, "Ohio does not recognize libel through implied statements." *Stohlmann v. WJW TV, Inc.*, 8th Dist. Cuyahoga No. 86491, 2006-Ohio-6408, ¶ 13, citing *Krems v. Univ. Hosps. of Cleveland*, 133 Ohio App.3d 6, 12, 726 N.E.2d 1016 (8th Dist.1999) [7]

**{¶ 59}** Woods relies on this court's recent opinion in *Hersh*, 8th Dist. Cuyahoga No. 109430, 2021-Ohio-2582, to support his position that his complaint

---

[7] Although the media defendants referenced in their motion to dismiss a website to allow the trial court to access the televised broadcast, our review under a Civ.R. 12(B)(6) is limited to the allegations in the complaint and the non-objected attachments.

sufficiently pleaded an actionable claim for defamation against the media defendants. We find *Hersh* distinguishable.

{¶ 60} Unlike in this case and *Leadscope*, *Hersh* did not involve a news report presenting two opposing sides of a dispute. To the contrary, the defendant in *Hersh* was accused of sending a letter containing accusations that the plaintiff had engaged in "inappropriate behavior with young men under the age of thirteen," and expressing concern that the plaintiff's intent to start a Boy Scout troop would be "a potentially unhealthy and dangerous situation," and further "warn[ing]" the recipients "not to let young children be in his care." *Id.* at ¶ 26. This court found that the plaintiff had adequately alleged defamation because the only reasonable interpretation of the letter was that the plaintiff was being accused of engaging in pedophilia — plainly a defamatory charge, if false. *Id.* at ¶ 36, 45*; see also Wilson v. Wilson*, 2d Dist. Montgomery No. 21443, 2007-Ohio-178, ¶ 13 (accusation of pedophilia "constituted defamation per se because the assertion of pedophilia involves a charge of moral turpitude and is an indictable offense"). Here, the alleged factual inaccuracies in the news report are nondefamatory, and the report plainly falls within the Ohio Supreme Court's ruling in *Leadscope* rendering publications presenting both sides of a legal dispute not actionable defamation as a matter of law. Accordingly, *Hersh* is not applicable.

### 2. Other Publication-Based Claims

{¶ 61} Aside from his defamation claims, Woods asserts seven other causes of action — false light invasion of privacy, false light wrongful intrusion upon

seclusion, tortious interference with a contractual relationship, tortious interference with business relationships, private nuisance, negligence, and intentional infliction of emotional distress — that are based entirely on the publication of the news report. It is well-settled that a plaintiff who cannot recover for defamation cannot recover under other legal theories based on the same publication, because those claims are subject to the same First Amendment protections. *See Shifflet*, 69 Ohio St.2d at 184, 431 N.E.2d 1014 (fact that publication was true and protected by fair report privilege was complete defense to all claims based on it); *A&B-Abell Elevator Co., Inc.*, 73 Ohio St.3d 1, 15, 651 N.E.2d 1283 (1995) (tortious interference); *Vail*, 72 Ohio St.3d at 283, 649 N.E.2d 182 (intentional infliction of emotional distress); *Battig v. Forschey*, 7 Ohio App.3d 72, 73-74, 454 N.E.2d 168 (4th Dist.1982) (any privileges applicable to defamation claims apply with equal force to invasion of privacy claims); *Herring v. Adkins*, 150 Ohio Misc.2d 13, 2008-Ohio-7082, 902 N.E.2d 93, ¶ 10 (C.P.) ("Claims of tortious interference with a business relationship are subject to the First Amendment requirements that apply in claims for defamation."). Accordingly, because Woods failed to allege any facts to support the above claims beyond relying on the same nondefamatory news report, those additional publication-based claims were properly dismissed pursuant to Civ.R. 12(B)(6).

{¶ 62} Nevertheless, we further find that Woods's claims fail because he has not adequately alleged actual malice on the part of the media defendants. A plaintiff must show that the media defendants acted with actual malice — that is, the defendant "had knowledge of or acted in reckless disregard as to the falsity of the

publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 58; *see also Varanese v. Gall*, 35 Ohio St.3d 78, 80, 518 N.E.2d 1177 (1988) (actual malice requires proof that defendant "published the defamatory statement either with actual knowledge that the statement was false, or with a high degree of awareness of its probable falsity"). Woods does not provide any factual support for actual malice by the media defendants.

{¶ 63} Woods's trespass claim as alleged against the media defendants in his eighth cause of action fails as a matter of law because Woods was not in possession of the property when the alleged trespass took place — a necessary element of a trespass claim under Ohio law. As this court has held, "[t]o prevail on a claim of trespass, the claimant must prove he had possession of the subject premises at the time of the trespass." *Northfield Park Assocs. v. NE Ohio Harness*, 36 Ohio App.3d 14, 18, 521 N.E.2d 466 (8th Dist.1987). Here, Woods alleged that the media defendants and his former tenants filmed part of the broadcast "at [the] Applegate property" — the property where at least one of the former tenants had lived before Woods evicted them. But Woods also alleged that "[a]t the time, the Applegate property had a new and unrelated tenant occupying it." In other words, while Woods continued to own the house, he was not in possession of it. As a result, his trespass claim fails as a matter of law, and the trial court correctly dismissed it.

{¶ 64} Woods's twelfth cause of action for fraud, fraudulent concealment, or in the alternative, negligent misrepresentation, fails to state a claim against the

media defendants because the First Amendment shields reporters from liability for actions taken during the newsgathering process, and because the complaint did not satisfy Civ.R. 9(B).

**{¶ 65}** Civ.R. 9(B) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fraud has various elements: (1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986). The elements of fraudulent concealment are: (1) actual concealment of a material fact, (2) with knowledge of the fact concealed, (3) with the intent to mislead another into relying upon it; (4) justifiable reliance on the concealment; and (5) injury proximately caused by the reliance. *Bencivenni v. Dietz*, 11th Dist. Lake No. 2012-L-127, 2013-Ohio-4549, ¶ 42.

**{¶ 66}** The elements of negligent misrepresentation are (1) one who, in the course of his or her business, profession, or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or

communicating the information. *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989).

**{¶ 67}** Woods alleged in his complaint that the media defendants "misrepresented that their intention of conducting an interview with him was to get his side of the story on the struggles that he faces as a landlord." Although Woods alleged that the story did not adequately portray "his side of the story" as allegedly promised, this subjective belief does not create a misrepresentation claim based on the media defendants' efforts to secure an interview with Woods. Reporters misrepresenting their identity or purpose or promising "fair" or "sympathetic" coverage to sources cannot give rise to a misrepresentation claim. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir.1999) (no misrepresentation liability where reporters posed as employees).

**{¶ 68}** Moreover, according to the news report transcript attached to the complaint, the news report obtained Woods's side of the story. He told Pagonakis: "Well, as a landlord it's just hard." Woods explained that many tenants are "sneaking people in to live, their [sic] not paying the water bill, they're not paying the rent, * * * they bring pets in when their [sic] not supposed to." The published article contains the same quotes and also quotes Woods as saying: "I try to give all my tenants plenty of leeway when it comes to being late with the rent, but I need that money to keep my home maintained, and after four months it becomes difficult." Accordingly, the media defendants obtained Woods's side of the story, which the media defendants promised to do — to "get [Woods's] side of the story on the struggles that he faces as

a landlord." Accordingly, because the "representation" Woods relied on was true, both his fraud and negligent misrepresentation claims were properly dismissed.

{¶ 69} Woods's cause of action for civil conspiracy also fails to state a claim against the media defendants because conspiracy is not an independent cause of action. "Ohio law does not recognize civil conspiracy as an independent cause of action." *Bender v. Logan*, 2016-Ohio-5317, 76 N.E.3d 336, ¶ 78 (4th Dist.). That means that, under Ohio law, "[a]n underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998). Accordingly, because Woods otherwise fails to state a viable tort claim, his civil conspiracy claim likewise fails as a matter of law. *Mills v. Westlake*, 2016-Ohio-5836, 70 N.E.3d 1189, ¶ 48 (8th Dist.) (plaintiff's failure to show the "existence of an unlawful act independent from the actual conspiracy" is "fatal to her civil conspiracy claim").

{¶ 70} Woods's cause of action for injunctive relief fails because in general, injunctive relief is a remedy, not a cause of action. *See, e.g., Premier Health Care Servs. v. Schneiderman*, 2d Dist. Montgomery No. 18795, 2001 Ohio App. LEXIS 5170 (Aug. 21, 2001) ("A preliminary injunction is a remedy; it is not a cause of action or a claim for relief."). Accordingly, it was proper for the trial court to dismiss Woods's claim for injunctive relief as asserted against the media defendants.

{¶ 71} Based on our de novo review and viewing the allegations in the complaint in favor of Woods, including the documents incorporated by reference and attached to the complaint, we find that the complaint against the media

defendants fails to state a claim upon which relief could be granted.  The trial court did not err in granting the media defendants' Civ.R. 12(B)(6) motion to dismiss.

### D.  Defendant Deener — Civ.R. 12(B)(6)

**{¶ 72}** Woods named Deener in twelve "causes of action" in his complaint — defamation per se; defamation per quod; invasion of privacy/false light; invasion of privacy/wrongful intrusion upon seclusion; tortious interference with a business relationship; tortious interference with a contractual relationship; private nuisance; trespass and civil conspiracy to commit a trespass; negligence; intentional infliction of emotional distress; civil conspiracy; and injunctive relief.

**{¶ 73}** Woods alleged in his complaint that Deener, along with the other former tenants, maliciously conspired as a group to engage in a campaign of harassment to defame him, harm him in his occupation, and cause him serious emotional distress, physical harm, and financial loss.  He claimed that the former tenants engaged in this campaign by contacting the media defendants to broadcast and publish a news story to publicly defame him and place him in false light.

**{¶ 74}** Woods further alleged that in September 2018, Deener, along with the other former tenants, colluded and conspired by setting up social media accounts and/or participating in Facebook groups to locate and align all current and prospective tenants and contractual business relationships of Woods to intentionally and maliciously defame his character and reputation, and to cause him emotional distress, and physical and financial harm.  Woods further alleged that the former tenants colluded and conspired by placing flyers titled "Public Service

Announcement" on several of his occupied properties, at random locations, and on cars in parking lots near his rental properties. The complaint alleged that the flyers included "false and unprivileged defamation per se, per quod[,] and false light statements" about him and his business, What a Lovely Home. Specifically, the complaint alleged that the flyers included statements such as: "Unfair and horrible landlords who evict people for no reason" and "Instead of doing business with them, you should view them the same way you do pedophiles, drug dealers, slumlords, baby killers or someone with a contagious disease. Stay away from them and do not rent from them!!! #Slumlords, #Whatauglyhome, #Followus."

{¶ 75} Woods also alleged in his complaint that in October and November 2018, Deener, along with other former tenants, used Twitter accounts to defame him and interfere with his business and contractual relationships. Woods alleged in the complaint that Deener made the following Twitter statements in response to other statements made by the other former tenants: "Doug Woods houses have black mold and it's not safe for your children! #Icantbreathe #badforasthma." Woods attached and incorporated into his complaint a printout of the Twitter postings by the former tenants, including the one made by Deener.

{¶ 76} Deener filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). According to Deener, the accusations against her are not actionable because the alleged statements were matters of opinion, and Woods failed to sufficiently plead the other causes of action other than making conclusory statements and bare assertions. Woods opposed Deener's motion, contending that

the allegations in his complaint, when viewed in a light most favorable to him, sufficiently state claims upon which relief could be granted.

{¶ 77} The trial court found that Deener's statements were matters of opinion, and thus, not actionable. Specifically, the court found that a reasonable reader of the alleged statements attributable to Deener would perceive those statements as expressing an opinion. The trial court concluded that considering the context in which the statements were made and the totality of the circumstances, the alleged statements were not actionable under the law.

{¶ 78} In our de novo review, we find that the trial court erred in granting Deener's Civ.R. 12(B)(6) motion to dismiss because the factual allegations, statements, and conduct attributed to Deener, if true, are sufficient to state a claim for defamation per se; defamation per quod; invasion of privacy/false light; tortious interference with a business relationship; tortious interference with a contractual relationship; intentional infliction of emotional distress; and civil conspiracy. Woods's claim for injunctive relief is not a cause of action, but remains as a prayer for relief.

### 1. Defamation Per Se and Per Quod

{¶ 79} A person who brings a defamation claim must plead and prove: (1) a false and defamatory statement, (2) about that person, (3) published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm

(defamation per quod to the plaintiff). *Thomas v. Cohr, Inc.*, 197 Ohio App.3d 145, 2011-Ohio-5916, 966 N.E.2d 915, ¶ 24 (1st Dist.).

{¶ 80} As previously defined, a statement is defamatory per se when it falls into one of three categories: "(1) the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment, (2) the imputation of some offensive or contagious diseases calculated to deprive the person of society, or (3) having the tendency to injure the plaintiff in his trade or occupation." *Wilson v. Harvey*, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83 (8th Dist.). In order for a statement to be defamatory per se, it must be defamatory upon the face of the statement. *Becker v. Toulmin*, 165 Ohio St. 549, 556, 138 N.E.2d 391 (1956).

{¶ 81} Viewing the statements attributed to Deener as true and after applying the four-part totality of the circumstances test when determining whether statements are fact or opinion,[8] we find that an average reader could construe the statements as fact. Woods alleged that Deener posted Twitter statements stating that Woods's rental properties have "black mold," which is "not safe for your children," and participated in creating and posting the "Public Service Announcement" flyers on his rental homes and vehicles in the vicinity. Looking at the general context of the Twitter statement, it was made in response to a Twitter feed from former tenants regarding their experiences with renting from Woods and

---

[8] Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared. *Vail*, 72 Ohio St.3d at 282, 649 N.E.2d 182, citing *Scott*, 25 Ohio St.3d at 250, 496 N.E.2d 699.

then dealing with legal proceedings involving Woods. The specific language used by Deener is a statement that is verifiable. Additionally, because she is a former tenant of Woods, the statement implies that she has firsthand knowledge that substantiates the statement.

{¶ 82} The same can also be said about the flyers. Regarding the "Public Service Announcement" flyers, Woods alleges in his complaint that the flyers made defamatory statements about him and his business and were placed in the vicinity of his rental properties. The statements on the flyers allege that Woods "evicts people for no reason," and invite the reader to view Woods the same as "pedophiles, drug dealers, slumlords, baby killers, or someone with a contagious disease." Whether Woods "evicts people for no reason" is verifiable, and the other statements made involve allegations of immoral turpitude.

{¶ 83} Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, we find that he sufficiently pleaded causes of action for defamation per se and per quod.

### 2. Invasion of Privacy — False Light

{¶ 84} The Ohio Supreme Court has recognized false light as a cause of action under the invasion-of-privacy umbrella. *Welling*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, at ¶ 61. To establish false light invasion of privacy, a plaintiff must show: (1) the defendant gave publicity to a private matter concerning the plaintiffs; (2) the publicity placed the plaintiff in a false light; (3) the false light would be highly offensive to a reasonable person; and (4) the defendant had knowledge of

or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Id.* at syllabus. To be actionable false light, "the statement made must be untrue." *Id.* at ¶ 52; *see also Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 38 (8th Dist.) (finding there must be untruthful statements commenting on private matters to be actionable false light).

{¶ 85} Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, the statements comment on private matters that placed Woods in a false light that would be highly offensive to a reasonable person. The tort "applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Welling* at ¶ 55.

{¶ 86} The comments made in this case were in regard to Woods and his business of renting properties in the greater Cleveland area. Woods alleged that Deener and the former tenants created and conducted a campaign against him by making false statements on social media and then printing flyers containing statements that placed him in a false light and caused interference with existing tenants and business relationships. According to Woods, the comments were not true, and he alleged sufficient facts to show that the statements were made with reckless disregard as to the falsity of the statements or that they painted him in a false light. Accordingly, Woods sufficiently pleaded a cause of action for false light/invasion of privacy.

### 3. Invasion of Privacy — Wrongful Intrusion upon Seclusion

{¶ 87} In *Lunsford v. Sterilite of Ohio, L.L.C.*, 162 Ohio St.3d 231, 2020-Ohio-4193, 165 N.E.3d 245, ¶ 32-33, the Supreme Court explained that the wrongful intrusion into one's private activities has been called "intrusion upon seclusion." In order to properly plead this cause of action, the complaint must allege (1) that there was an intrusion by the defendant into a matter, (2) that plaintiff had a right to keep private, and (3) that the method of the intrusion would be considered highly offensive to a reasonable person. *Id.* at ¶ 34, citing *Sustin v. Fee*, 69 Ohio St.2d 143, 145, 431 N.E.2d 992 (1982).

{¶ 88} Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, we find that he failed to sufficiently plead this cause of action. He does not allege any intrusion by Deener in a private matter. His allegation centers around Deener returning to or intruding upon his rental properties for the purposes of causing him harm. This allegation makes bare assertions and conclusory statements.

{¶ 89} Accordingly, the trial court did not err in dismissing the fourth cause of action as alleged against Deener.

### 4. Tortious Interference with Business and Contractual Relationships

{¶ 90} The elements of a claim for tortious interference with a business relationship or contract are: (1) a business relationship or contract; (2) the defendant's knowledge of the relationship or contract; (3) the defendant's intentional or improper action taken to prevent a contract formation, procure a

contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages. *Smith v. Natl. W. Life*, 2017-Ohio-4184, 92 N.E.3d 169, ¶ 20-21 (8th Dist.), citing *Byrne v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 95971, 2011-Ohio-4110, ¶ 28. Because it is a tort, a claim of tortious interference requires an improper act. *Syed v. Poulos*, 8th Dist. Cuyahoga Nos. 103137 and 103499, 2016-Ohio-3168, ¶ 17, citing *Baseball at Trotwood, L.L.C. v. Dayton Professional Baseball Club*, S.D.Ohio No. C-3-98-260, 2003 U.S. Dist. LEXIS 27460 (Sept. 2, 2003).

{¶ 91} In *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999), the Ohio Supreme Court reaffirmed the elements of the cause of action of tortious interference with contract as enumerated in paragraph two of the syllabus of *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863 (1995). Those elements are: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.

{¶ 92} Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, we find that he sufficiently pleaded causes of action for interference with business and contractual relationships. The allegations set forth that Deener and former tenants maliciously and intentionally lobbied a campaign against Woods to prevent individuals from renting homes owned by Woods. Viewing the allegations in favor of Woods, the flyers and Twitter

posts specifically targeted potential and current renters and contained statements that, if true, would cause individuals to breach existing contracts and business relationships. Woods alleged that based on the conduct of Deener and the former tenants, two business relationships ceased when the purchasers rescinded or breached their contracts with him for the purchase of real and personal property.

{¶ 93} Accordingly, Woods's complaint sufficiently states a claim for tortious interference with business and contractual relationships.

### 5. Private Nuisance; Trespass and Civil Conspiracy to Commit a Trespass

{¶ 94} Causes of action 7 and 8 both pertain to the unauthorized presence on another's property. A private nuisance is "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Brown v. Cty. Commrs*, 87 Ohio App.3d 704, 712, 622 N.E.2d 1153 (4th Dist.1993). In order for a private nuisance claim to be actionable, the invasion must be either intentional and unreasonable, or unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Id.*; *see Taylor v. Cincinnati*, 143 Ohio St. 426, 55 N.E.2d 724 (1944), paragraph three of the syllabus. In *Ogle v. Hocking*, 4th Dist. Hocking No. 14CA3, 2014-Ohio-5422, ¶ 39, the court set forth the elements of civil trespass: "(1) an unauthorized intentional act and (2) entry upon land in the possession of another." *Id.*, quoting *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 102 (2d Dist.).

{¶ 95} Woods's claims for private nuisance and trespass fail because he fails to sufficiently allege that Deener entered upon or invaded the private use and

enjoyment of his property. Woods makes a bare assertion and legal conclusion in his complaint that Deener and the other former tenants unlawfully entered upon his property that was in his possession. Our review of the complaint, even viewing the allegations in favor of Woods, fails to reveal any supported factual allegation against Deener demonstrating that Woods was in possession of property when Deener entered without permission, or invaded his private use or enjoyment of his property.

{¶ 96} Accordingly, Woods's complaint fails to state a claim for private nuisance, trespass, or civil conspiracy to commit trespass.

### 6. Negligence

{¶ 97} To prove negligence, Woods must allege and prove the existence of a duty, a breach of that duty, and injury proximately resulting from the breach. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984); *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998). "A defendant's duty may be established by common law, legislative enactment, or by the particular facts and circumstances of the case." *Chambers* at 565, citing *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 119 N.E.2d 440 (1954), paragraph one of the syllabus.

{¶ 98} Woods claims that Deener owed him a duty "not to impede or circumvent [his] right to due process and a fair trial" by subjecting him to a trial by "court of public opinion." He further contends that Deener owed him a duty pursuant to the terms of her lease to not return to his property once evicted. Finally, Woods contends that Deener owed him a duty to protect him from harm.

**{¶ 99}** Even construing these allegations in favor of Woods, we find that Woods has failed to plead any actual or implied duty owed to Woods by Deener. These allegations are not actionable as alleged because they either do not exist under the law, arise as a breach of contract claim (breach of the lease), or only provide bare assertions that duty is owed.

**{¶ 100}** Woods's negligence claim therefore was properly dismissed pursuant to Civ.R. 12(B)(6).

### 7. Intentional Infliction of Emotional Distress

**{¶ 101}** In *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 6, this court held:

> To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*See also Hersh*, 2021-Ohio-2582, 176 N.E.3d 1135, at ¶ 44.

**{¶ 102}** Accepting the factual allegations of the complaint as true and viewing all reasonable inferences in favor of Woods, we find that he has sufficiently pleaded a cause of action for intentional infliction of emotional distress. He alleged that Deener and the former tenants intended to cause serious emotional distress by creating and conducting a harassment campaign against him and his business. According to Woods, Deener's conduct included posting false defamatory

statements on Twitter and participating in creating flyers that encouraged others to view Woods and his business the same way as they would "pedophiles, drug dealers, slumlords, baby killers, or someone with a contagious disease." According to the allegations in the complaint, the conduct was extreme because the Twitter posts indicate that Deener and the former tenants were fabricating falsehoods to damage Woods's business and reputation. Finally, Woods alleged that he suffered severe psychological injury and mental anguish. His complaint sufficiently pleaded this cause of action to survive Deener's Civ.R. 12(B)(6) motion to dismiss.

### 8. Civil Conspiracy

{¶ 103} In order to maintain a claim of civil conspiracy in Ohio, Woods must establish the following: (1) a malicious combination of two or more persons; (2) causing injury to another person or property; and (3) the existence of an unlawful act independent from the conspiracy itself. *Syed*, 8th Dist. Cuyahoga No. 99884, 2013-Ohio-5739, at ¶ 14, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). An underlying unlawful act must be committed in order to establish an action for civil conspiracy. *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996).

{¶ 104} Woods alleged that Deener and the former tenants acted together in a malicious manner in their attempts to defame him, place him in false light, interfere with business and contractual relationships, and engage in other tortious conduct. Because Woods sufficiently pleaded those causes of action, which are

independent from the conspiracy itself, we also find that Woods's adequately pleaded a claim for civil conspiracy to survive a Civ.R. 12(B)(6) motion to dismiss.

### 9. Injunctive Relief

{¶ 105} Woods asserted a cause of action for injunctive relief. In general, injunctive relief is a remedy, not a cause of action. *See, e.g., Schneiderman*, 2d Dist. Montgomery No. 18795, 2001 Ohio App. LEXIS 5170 ("A preliminary injunction is a remedy; it is not a cause of action or a claim for relief."). Because Woods has pleaded viable causes of action against Deener, the remedy of injunctive relief remains.

{¶ 106} Accordingly, the trial court's judgment dismissing the complaint against Deener is reversed in part and affirmed in part. The claims that survive against Deener are defamation per se; defamation per quod; invasion of privacy/false light; tortious interference with a business relationship; tortious interference with a contractual relationship; intentional infliction of emotional distress; and civil conspiracy. Woods's claim for injunctive relief is not a cause of action but remains as a prayer for relief.

### E. Defendant Clos — Civ.R. 12(C)

{¶ 107} Woods named Clos in eight causes of action in his complaint — defamation per se; defamation per quod; invasion of privacy/false light; tortious interference with a contractual relationship; private nuisance; trespass and civil conspiracy to commit a trespass; intentional infliction of emotional distress; and injunctive relief.

{¶ 108} Woods alleged in his complaint that Clos told one of Woods's tenants that when Woods purchased the home in which she was living, the home contained mold. According to Woods, Clos told the tenant that instead of remediating the mold, Woods hired "thugs to install a new roof on the house to cover it up." Woods stated that these statements caused the tenant to request a Section 8 inspection and "to notify [him] of her need to break the lease." According to Woods, the inspection did not reveal any mold issues. Woods alleged that these statements made by Clos were false.

{¶ 109} Clos, pro se, filed an answer denying the allegations and asserting several affirmative defenses, including failure to state a claim upon which relief could be granted. Subsequently, Clos moved for judgment on the pleadings pursuant to Civ.R. 12(C). According to Clos, the accusations against him are either untrue or statements of opinion. Woods opposed Clos's motion, contending that it was untimely filed based on the trial court's case management schedule and that Clos did not seek leave. Additionally, he claimed that the allegations in his complaint, when viewed in a light most favorable to him, sufficiently state claims upon which relief could be granted. The trial court found that Clos's statements were matters of opinion, and thus, not actionable.

{¶ 110} Woods contends that the trial court erred in granting Clos's motion to dismiss because it was untimely filed. We find no abuse of discretion in the trial court's decision to consider Clos's motion. The court noted when addressing another opposition filed by Woods to an alleged untimely motion that the general

deadline was merely set to "curb a series of endless filings and counter-filings." The court noted that any specific date granted by the trial court controlled the determination of whether a specific dispositive motion was timely. Accordingly, we find this decision neither arbitrary nor unreasonable.

{¶ 111} Although we find the trial court's decision granting Clos leave was not an abuse of discretion, we find that the trial court erred in granting Clos's Civ.R. 12(C) motion in its entirety. We find that the trial court improperly dismissed Woods's claims against Clos for defamation per se and per quod and tortious interference with a contractual relationship because the alleged statements made by Clos to Woods's tenant were false and insinuated that Woods violated the law by concealing mold in one of his rental homes. According to Woods, this notification caused the tenant to request a Section 8 inspection and break her lease. According to Woods, the inspection did not reveal any mold. The allegations in the complaint must be accepted as true at this juncture. Accordingly, we find that the Woods's claims for defamation per se and per quod and tortious interference with a contractual relationship were sufficiently pleaded to survive a Civ.R. 12(C) motion.

{¶ 112} We find that the trial court properly dismissed Woods's other causes of action against Clos for invasion of privacy/false light, private nuisance, trespass and civil conspiracy to commit a trespass, intentional infliction of emotional distress, and injunctive relief because Woods failed to state a claim beyond bare assertions and legal conclusions.

{¶ 113} Accordingly, the trial court's judgment dismissing the complaint against Clos is reversed in part and affirmed in part. Woods's claims for defamation per se and per quod and tortious interference with a contractual relationship survive Clos's Civ.R. 12(C) motion for judgment on the pleadings. Woods is also entitled to pursue the injunctive relief sought in his prayer for relief in the event such relief is appropriate.

### III. Final Judgment

{¶ 114} Woods contends in this third assignment of error that "the trial court's final judgment entry improperly disposed of the matter." Woods contends, without citation to any legal authority, that the trial court's journal entry filed May 7, 2021, is vague.

{¶ 115} Although not relevant to the argument made by Woods on appeal, this court noted earlier that at the March 2, 2020 hearing, the trial court orally dismissed the claims against the non-answering defendants but did not indicate this language in the March 3, 2020 journal entry — the journal entry only noted that it disposed "of all pending motions." Accordingly, to remove any perceived jurisdictional impediment, this court ordered the trial court to enter an order memorializing its oral decision regarding the non-answering defendants. The trial court issued the order on December 6, 2021.

{¶ 116} Accordingly, our review of the trial court's journal entries dated March 3, 2020, May 7, 2021, and December 6, 2021, when taken together,

specifically identify and dispose of all matters presented in this case. Woods's third assignment of error is overruled.

## IV. Conclusion

{¶ 117} The trial court erred in dismissing the complaint against the remaining non-answering defendants because it failed to give Woods notice of its intention to sua sponte dismiss the complaint pursuant to Civ.R. 12(B)(6). The trial court did not err in dismissing the complaint against Boulevardez and the Unknown Father of Children of Latanya Tyes because neither party was served with the complaint within a year.

{¶ 118} The trial court did not err in granting the media defendants' Civ.R. 12(B)(6) motion to dismiss because Woods's complaint failed to state a claim upon which relief could be granted because the news report presented both sides of the dispute between the parties and the news report was substantially truthful.

{¶ 119} The trial court erred in dismissing the complaint in its entirety against Clos and Deener. Woods's complaint sufficiently pleaded causes of action against Clos for defamation per se and per quod and tortious interference with a contractual relationship. Regarding the allegations against Deener, Woods's complaint sufficiently pleaded causes of action for defamation per se, defamation per quod, invasion of privacy/false light, tortious interference with a business relationship, tortious interference with a contractual relationship, intentional infliction of emotional distress, and civil conspiracy. Additionally, Woods is entitled

to pursue the injunctive relief sought in his prayer for relief in the event such relief is appropriate.

**{¶ 120}** Judgment affirmed in part, reversed in part, and remanded for further proceedings.

It is ordered that parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR