[Cite as *Woods v. Douglas*, 2024-Ohio-338.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| WILL WOODS, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 112515 |
| v. | : | |
| QUINTA DOUGLAS, ET AL., | : | |
| Defendants-Appellees. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 1, 2024

Civil Appeal from the Garfield Heights Municipal Court
Case No. CVG-2201180

### *Appearances:*

Will Woods, *pro se*.

Law Office of Arleesha Wilson and Arleesha Wilson, *for appellees*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Plaintiff-appellant, Will Woods ("Woods"),[1] pro se, appeals from the trial court's decision granting judgment in favor of defendants-appellees, MD3

---

[1] Woods is the owner of What a Lovely Home and was formerly known as Doug Woods. *See Woods v. Sharkin*, 8th Dist. Cuyahoga No. 110567, 2022-Ohio-1949.

Crosstown L.L.C. ("MD3") and Marlon Davis ("Davis"), on Woods's damages claim. For the reasons that follow, we affirm.

## I.   Background

{¶ 2}   In November 2015, Woods Cove III (a company that buys unpaid tax certificates from the Cuyahoga County Treasurer and then forecloses on properties if the tax certificate is not redeemed)[2] filed a foreclosure complaint against MD3 and Marlone Davis, as agent for MD3, in the Cuyahoga County Common Pleas Court regarding commercial property located at 4666 Warner Road (the "property") in Garfield Heights, Ohio. *Woods Cove III v. MD3 Crosstown, L.L.C., et al.,* Cuyahoga C.P. No. CV-15-854600.[3] On December 29, 2021, Woods purchased the property at the sheriff's sale. The sale was confirmed on January 19, 2022, and Woods received title to the property on March 8, 2022.

{¶ 3}   On April 15, 2022, Woods filed a complaint in the Garfield Heights Municipal Court for forcible entry and detainer and money damages regarding the property against MD3; Davis (an officer of MD3); Marlone Davis; Quinta Douglas; Charles, Pamela, and Tamera Campbell; A&R Marketing Service, L.L.C.; and "unknown occupants" of the property.

{¶ 4}   On May 13, 2022, Woods and counsel for MD3 and Davis appeared at a hearing before a magistrate regarding Woods's first cause of action, the eviction.

---

[2] *See Woods Cove III, L.L.C. v. Am. Guaranteed Mgmt. Co., L.L.C.*, 8th Dist. Cuyahoga Nos. 105494 and 105901, 2018-Ohio-1829, ¶ 2.

[3] TLOA Acquisitions, L.L.C.—Series 2 was later substituted as plaintiff.

Defendants' counsel asked the magistrate to continue the hearing for one week because the defendants had not yet been served and to allow them time to file a Civ.R. 60(B) motion for relief from judgment in the common pleas court foreclosure case. The magistrate granted a seven-day continuance.

{¶ 5} On May 20, 2022, at the next hearing, MD3 and Davis filed a motion for a stay of the eviction proceedings. The municipal court granted the stay pending a hearing, which it held on June 6, 2022. At the hearing, counsel for MD3 and Davis asserted that MD3 and Davis wanted to stay the eviction proceedings because they had filed a Civ.R. 60(B) motion for relief from judgment in the common pleas court foreclosure case. Counsel asserted that MD3 and Davis had two attorneys during the foreclosure case but the first attorney was disbarred during the proceedings and the second was suspended. Counsel asserted that despite the attorneys' disbarment and suspension, the common pleas court proceeded with the foreclosure action without notice to MD3 and Davis, in a denial of due process. Counsel also asserted that the property should not have been foreclosed because in 2015, Davis entered into an agreement with Woods Cove III to pay the outstanding taxes and had paid $25,000 on the outstanding tax certificate. Counsel stated that MD3 and Davis wanted to stay the eviction proceeding in order to allow them to be heard on their motion for relief from judgment in the common pleas court. The court granted the motion for stay, ruling that it would stay the eviction proceedings until the common pleas court ruled on the Civ.R. 60(B) motion for relief from judgment.

{¶ 6} On June 27, 2022, the common pleas court denied MD3's and Davis's Civ.R. 60(B) motion for relief from judgment in the foreclosure action. They appealed the denial and on August 22, 2022, this court dismissed the appeal. *Woods Cove III, L.L.C. v. MD3 Crosstown, L.L.C., et al.*, 8th Dist. Cuyahoga No. 111783.

{¶ 7} On June 28, 2022, the municipal court lifted the stay in the eviction proceeding and ordered the clerk to issue a writ of restitution granting possession of the property to Woods.[4] On July 27, 2022, Woods filed a motion for sanctions against MD3, Davis, Marlone Davis, Quinta Douglas ("Douglas"), and counsel for MD3 and Davis, in which he argued that defendants' and counsel's conduct in requesting the one-week continuance and the stay was frivolous and sanctionable and undertaken solely for the purpose of delay and that he had to incur additional litigation expenses as a result of their unwarranted filings.

{¶ 8} On August 25, 2022, MD3 and Davis filed an answer to Woods's complaint. On August 26, 2022, before trial commenced before a magistrate on Woods's damages claim, Woods filed a motion for default judgment against all the defendants, asserting that they were served by a special process server on July 27, 2022, but as of August 25, 2022, had not answered the complaint. Woods requested a $15,000 judgment against each defendant.

---

[4] On June 13, 2022, Woods filed a complaint in this court seeking writs of procedendo or prohibition directing the municipal court judge to proceed to judgment in the eviction proceeding. This court dismissed Woods's complaint, finding that his claims for relief were moot because the municipal court judge had lifted the stay and ordered the issuance of a writ of restitution. *State ex rel. Woods v. Digeronimo*, 8th Dist. Cuyahoga No. 111617, 2022-Ohio-2589.

{¶ 9} After trial, the magistrate issued an order denying Woods's motion for default judgment, finding that MD3 had filed an answer and service had not been perfected on the other defendants. The magistrate ordered that Woods's damages claim would be dismissed without prejudice if he did not perfect service on the other defendants within six months of when the complaint was filed. Woods filed an objection to the magistrate's decision, asserting that service had been perfected on all defendants. The magistrate also issued an order rendering judgment in favor of MD3 on Woods's damages claim.

{¶ 10} On October 17, 2022, the court held a hearing regarding Woods's objection to the magistrate's decision. In its judgment entry of the same day, the court vacated the magistrate's decision, except as to MD3 and Davis, finding that they had appeared in the case. The court ruled that the remaining defendants had not been served and dismissed the action against them without prejudice because six months had elapsed since the complaint was filed.

{¶ 11} On November 22, 2022, the municipal court vacated its October 17, 2022 judgment entry and reinstated the action as to all defendants. The court found that defendants' counsel had entered an appearance on behalf of Douglas, Davis, and MD3 and agreed to receive service on their behalf.[5] The court found that the remaining defendants had not been properly served at the 4666 Warner Road address for the property as designated in Woods's complaint, but rather, were

---

[5] Our review of counsel's notice of appearance demonstrates that counsel did not agree to receive service of the summons and complaint. She agreed to receive "notice of any court hearings and copies of any papers filed in this case."

served at 4664 Warner Road. The court found that it had no evidence that the defendants resided at 4664 Warner Road, however, and, furthermore, the process server attempted service after the bailiff had executed the writ of restitution when the defendants could no longer legally be occupying the property. The court ordered that if Woods did not perfect service within 60 days of the order, the complaint against those defendants would be dismissed without prejudice.

{¶ 12} On November 23, 2022, the court vacated the magistrate's decision regarding damages and ordered a trial de novo regarding Woods's damages claim. The court subsequently denied Woods's motion for sanctions against MD3 and Davis.

{¶ 13} The trial court held a bench trial on Woods's damages claim on February 16, 2023, after which the court issued judgment in favor of MD3 and Davis. Woods now appeals from this judgment.[6]

## II. Law and Analysis

### A. The Stay

{¶ 14} In his first assignment of error, Woods contends that the trial court abused its discretion, violated his due process rights, and prejudiced him in granting

---

[6] Woods's appeal was initially dismissed for lack of a final appealable order because after the trial court reinstated the case against Douglas; A&R Marketing; Charles, Pamela, and Tamera Campbell; Marlone Davis; and the unknown occupants of 4666 Warner Road, it did not issue a subsequent order resolving the case against those defendants. On September 28, 2023, the court dismissed the case against these defendants without prejudice, finding that Woods had failed to complete service, despite being granted an extension until January 22, 2023, to do so. This court then reinstated Woods's appeal.

a stay of the eviction proceedings until the common pleas court ruled on MD3's and Davis's Civ.R. 60(B) motion for relief from judgment.

{¶ 15} Trial courts have broad discretion in managing their dockets and setting case schedules. *180 Degree Solutions, L.L.C. v. Metron Nutraceuticals, L.L.C.*, 8th Dist. Cuyahoga No. 109986, 2021-Ohio-2769, ¶ 70. Accordingly, we review the trial court's decision granting the stay for an abuse of discretion.

{¶ 16} The Supreme Court of Ohio has defined "'abuse of discretion' as an 'unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could reasonably have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 371, ¶ 23. "'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.'" *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 17} We find no abuse of discretion. MD3 and Davis were not seeking to unreasonably delay the eviction proceeding by asking for a stay. Rather, they wanted an opportunity for the foreclosure court to rule on their Civ.R. 60(B) motion for relief from judgment in which they asserted that (1) the foreclosure sale had proceeded without notice to them, in violation of their due process rights, and (2) the facts demonstrated that Davis had paid the tax certificate upon which the foreclosure proceeding was based. It is readily apparent that if the common pleas

court had found that the foreclosure proceedings had proceeded improperly and granted the Civ.R. 60(B) motion for relief from judgment, any eviction proceedings in the municipal court would have been improper. Accordingly, we find no abuse of discretion in the trial court's decision to wait for the common pleas court to rule on the Civ.R. 60(B) motion for relief from judgment before it considered Woods's eviction claim. Further, we find no denial of Woods's due process rights or prejudice to him in the court's proper exercise of its discretion. The first assignment of error is overruled.

## B. Default Judgment

{¶ 18} In his second assignment of error, Woods contends that the trial court erred in denying his motion for default judgment, filed on August 26, 2022, because, he contends, all defendants had been properly served on July 27, 2022, by a special process server but as of August 25, 2022, had not filed an answer.

{¶ 19} Civ.R. 55 governs default judgments and provides that when a party against whom judgment is sought fails to plead or otherwise defend, the opposing party may apply to the court for a default judgment. Civ.R. 55(A). A trial court's decision to grant or deny a motion for default judgment is reviewed for an abuse of discretion. *Woods*, 8th Dist. Cuyahoga No. 110567, 2022-Ohio-1949, at ¶ 36, citing *Bank of Am., N.A. v. Malone*, 10th Dist. Franklin No. 11AP860, 2012-Ohio-3585, ¶ 18.

{¶ 20} MD3 and Davis filed an answer to Woods's complaint on August 25, 2022. Accordingly, the trial court did not abuse its discretion in denying Woods's motion for default against them.

{¶ 21} The trial court likewise did not abuse its discretion in denying Woods's motion with respect to the other defendants. Woods did not file any evidence in support of his request for $15,000 plus interest and costs from each non-answering defendant and, thus, the trial court properly exercised its discretion to deny Woods's unsupported motion. Furthermore, the record reflects that, as the trial court found, none of the defendants was served at 4666 Warner Road, the address designated for them in Woods's complaint. Additionally, the process server's attempted service occurred on July 27, 2022, well after the July 15, 2022 eviction date and, accordingly, service could not have been perfected at the 4666 Warner Road address because the defendants were no longer occupying the property. Although some defendants were served at 4664 Warner Road, Woods offered no evidence that they lived or worked at that address.[7]

{¶ 22} Finally, we note that despite denying the motion for default judgment and dismissing the complaint against the non-answering defendants for lack of service, on November 22, 2022, the court reinstated the action as to all defendants

---

[7] The trial court's ruling that Douglas had been served because counsel for MD3 and Davis entered an appearance and agreed to accept service on her behalf was erroneous. As noted earlier, counsel agreed to accept notices of hearings and court documents, but did not agree to accept service on behalf of any defendants. Thus, Woods's contention that the trial court's entry demonstrates that Douglas was properly served is without merit. Furthermore, the record reflects that counsel for MD3 and Davis later clarified that she did not represent Douglas.

and granted Woods 60 days to perfect service on the non-answering defendants. Although the damages trial was originally set for January 10, 2023, at Woods's request, it was continued to February 15, 2023. Thus, Woods had sufficient time to perfect service on all defendants prior to trial but did not do so. Moreover, at the damages trial, he did not ask for additional time to perfect service. Accordingly, we find no abuse of discretion in the trial court's denial of Woods's motion for default judgment. The second assignment of error is overruled.

### C. Sanctions

{¶ 23} On July 27, 2022, Woods filed a motion for sanctions pursuant to Civ.R. 11, which provides for an award of sanctions against counsel, and R.C. 2323.51, which provides for an award of sanctions against a party, the party's counsel, or both. In his motion, Woods asserted that counsel's request at the May 13, 2022 hearing for a one-week continuance was merely "an attempt to cause unnecessary delay." He argued further that defendants' motion for a stay, filed on May 20, 2022, asking the court to stay the eviction proceedings until the common pleas court ruled on their Civ.R. 60(B) motion for relief from judgment was "clearly frivolous" and required him to incur the unnecessary expense of filing a complaint for a writ of procedendo in the appellate court. Woods asserted that defendants and their counsel made "last minute, meritless, frivolous and unwarranted filings" that were designed to "intentionally cause unnecessary delay; harass and maliciously injure [him]; [and] serve an improper purpose and increase the cost of litigation." The trial court subsequently denied the motion without a hearing.

{¶ 24} In his third assignment of error, Woods contends that the trial court abused its discretion in denying his motion for sanctions against MD3, Davis, and their counsel without a hearing.

{¶ 25} The purpose of Civ.R. 11 is to deter pleading and motion abuses and assure the court that the pleading or motion was filed in good faith with sufficient grounds to support it. *D.L.M. v. D.J.M.*, 8th Dist. Cuyahoga No. 107992, 2019-Ohio-4574, ¶ 28. An attorney or pro se party who willfully violates the rule may be sanctioned by the court. *See* Staff Notes to Civ.R. 11. Such sanctions may include an order to reimburse expenses, including attorney fees. *D.L.M.* at *id.* R.C. 2323.51 provides for an award of sanctions for frivolous conduct in civil actions.

{¶ 26} A trial court's decision to deny sanctions can be reversed only if the trial court abused its discretion. *Fitworks Holdings, L.L.C. v. Pitchford-El*, 8th Dist. Cuyahoga No. 88634, 2007-Ohio-2517, ¶ 13, citing *State ex rel. Fant v. Sykes*, 29 Ohio St.3d 65, 505 N.E.2d 966 (1987).

{¶ 27} With respect to a hearing, this court has noted that there is no specific requirement in Civ.R. 11 that a hearing be held before determining the motion. *Fitworks* at ¶ 14, citing *Capps v. Milhem*, 10th Dist. Franklin No. 08AP-251, 2003-Ohio-5212. Therefore, a trial court's denial of a hearing on a motion for sanctions brought pursuant to Civ.R. 11 is reviewed to determine whether there exists an arguable basis for sanctions. *Fitworks* at *id.* "If an arguable basis exists for an award of sanctions, then the trial court must hold a hearing on the issue." *Id. See also Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 31 (trial court

abuses its discretion by denying a motion for sanctions without a hearing if an arguable basis exists for an award of sanctions).

{¶ 28} The trial court did not abuse its discretion in denying Woods's motion for sanctions without a hearing. Initially, we note that in his appellate brief, Woods refers us to events that allegedly occurred from June through October 2022, to support his argument that the trial court erred in denying his motion. However, as set forth above, Wood's motion for sanctions was based solely on events that occurred on May 13, 2022, and May 20, 2022. Accordingly, we will not consider Woods's arguments regarding alleged frivolous or wrongful conduct by defendants and their counsel that occurred after May 20, 2022.

{¶ 29} Our review of the record demonstrates that counsel's request on May 13, 2022, for a one-week continuance of the matter was not frivolous or interposed for purposes of delay. The defendants had not yet been served and appeared at the hearing solely because they had learned about the foreclosure case and then reviewed the docket to ascertain whether there were subsequent proceedings. In such circumstances, a request for a short continuance was clearly reasonable and not frivolous.

{¶ 30} The May 20, 2022 motion for a stay of the proceedings pending the common pleas court's consideration of MD3's Civ.R. 60(B) motion for relief from judgment was likewise not frivolous because no eviction could be ordered if the Civ.R. 60(B) motion for relief from the foreclosure judgment were granted. Accordingly, there was no arguable basis for an award of sanctions against MD3 and

Davis and their counsel, and the trial court did not abuse its discretion in denying Woods's motion without a hearing. The third assignment of error is overruled.

**D. Trial Court's Judgment Denying Woods's Claim for Damages**

{¶ 31} After vacating the magistrate's decision, the trial court held a bench trial on the second cause of action asserted in Woods's complaint; i.e., that he was entitled to damages caused to the property after he obtained title to the property on March 8, 2022; he was entitled to lost profits because although he obtained title to the property in March 2022, he could not rent out the apartment until July 18, 2022, when the Campbell defendants, who lived on the second floor of the property, were evicted; and he was entitled to reimbursement of the taxes he paid on the property for the first half of 2022.

{¶ 32} At trial, Woods testified that prior to acquiring the property at the foreclosure sale, he inspected the property in December 2021, and then saw it again in April 2022, and on July 1, 2022. Woods testified he observed no damage to the property during these visits. He presented photographs of the property that he took in April 2022 that he testified reflected no damage to the property. He presented other photographs that were taken after he obtained possession of the property on July 18, 2022, that Woods testified reflected damages to the walls of the property, two missing furnaces, and tires and rubbish strewn outside the property. Woods argued at trial that the damages occurred sometime between July 1, 2022, and July 18, 2022, and that Davis "had to be the one who caused the damages."

{¶ 33} On cross-examination, Woods admitted that he had not submitted any photographs that were taken before he obtained title to the property. He further admitted that he did not know when the Campbells vacated the property. He also admitted that Douglas, not Davis, owned the property as of the date of the sheriff's sale and that he had no knowledge that Davis ever lived at the property. He further admitted that he never saw Davis do anything to damage the property.

{¶ 34} Davis testified that he never lived at the property, that he did not cause any damage to the property, and that he had no knowledge of any damage to the property. Davis testified that he transferred title of the property to Douglas via a quitclaim deed on December 14, 2017, before the foreclosure proceeding, because her credit rating was better than his and he needed funds to rehabilitate the property after a fire. Davis said he did not rent the second floor of the property to the Campbells or collect rent from them although they were helping him fix up the property. Davis admitted that until July 18, 2022, he, Douglas, and the Campbells all had access to the property.

{¶ 35} In rendering judgment for MD3 and Davis, the court found that Woods bought the property at sheriff's sale and was seeking reimbursement for damages that he claimed arose after title to the property had transferred to him, as well as for lost profits he incurred and taxes he paid during the eviction process. The court found that prior to the sheriff's sale, the property was owned by Douglas but that Woods had not submitted any evidence that MD3 had a partnership or other relationship with Douglas. The court further found that Woods had not submitted

any evidence that either Davis or MD3 damaged the property, and further, that the property was purchased "as is" by Woods at sheriff's sale. The court also found that Woods was not in a contractual relationship with MD3 or Davis that would support an award of damages for lost profits or taxes.

{¶ 36} In his fourth, fifth, sixth, and seventh assignments of error, Woods challenges the trial court's judgment denying his claim for damages and entering judgment in favor of MD3 and Davis.

{¶ 37} In his fourth assignment of error, Woods contends that the trial court erred in determining that he was not entitled to compensation for alleged damages to the property because he bought the property "as is." He contends that the doctrine of caveat emptor, which is typically applied in foreclosure actions, does not apply to preventable damage to the property occurring after the sale that is caused by deliberate acts of the owner in possession. *Mid-American Natl. Bank v. Heiges*, 6th Dist. Ottawa No. 94OT025, 1994 Ohio App. LEXIS 5145, 6 (Nov. 18, 1994).

{¶ 38} In his fifth assignment of error, Woods contends that the trial court erred when, during trial, the judge stated that "[i]n Ohio, this is a title state. If your name is not on the deed, you have no legal rights or responsibilities. * * * [I]f your name is not on that title you have no liability to other people and you have no ownership." (Tr. 18.) Woods contends that Davis could be held responsible for the damage because despite the title transfer to Douglas, Davis had constructive ownership of the property because he only transferred the title temporarily to get a

loan by using Douglas's higher credit score, and he maintained control over the property even after the title transfer.

{¶ 39} We need not consider these assignments of error because even assuming for the sake of argument that the trial court erred in reaching these determinations, Woods failed to present sufficient evidence that Davis, and by extension MD3, caused any damage to the property.

{¶ 40} In a civil case, in which the burden of persuasion is by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency of the evidence) and the evidence on each element must satisfy the burden of persuasion (the manifest weight of the evidence). *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. "'Preponderance of the evidence' means 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition.'" *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed.1998). *See also State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54 ("A preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence.")

{¶ 41} Although Woods submitted photographs that he contends demonstrate that the property was damaged sometime between July 1, 2022, and July 18, 2022, he did not submit any evidence whatsoever regarding who caused the damage. Significantly, he admitted that he never saw Davis damage the property,

although he asserted that Davis "has to be the one who caused the damages" because he had access to the property until July 18, 2022, and was allegedly motivated to damage the property because he was "mad that their business venture had ended."

{¶ 42} Such conjecture does not demonstrate by a preponderance of the evidence that Davis damaged the property. Both Woods and Davis admitted that multiple people had access to the property from March 8, 2022, until July 18, 2022, and thus, any one of them could have damaged the property. Moreover, Davis specifically denied that he damaged the property or that he had any knowledge regarding the damage to the property. The judge, as the trier of fact, was free to assess Davis's credibility and accept or reject some or all of his testimony. *State v. Thomas*, 5th Dist. Delaware No. 13 CAC 05 0039, 2014-Ohio-319, ¶ 21.

{¶ 43} Because Woods presented nothing more than mere conjecture that Davis damaged the property, the judge did not err in determining that he had not proved his claim against Davis (and MD3) for damage to the property by a preponderance of the evidence.

{¶ 44} Woods contends that the trial court erred in denying his claim for taxes that he paid for the first half of 2022 because Davis allegedly promised to pay the taxes during the June 6, 2022 hearing on MD3's and Davis's motion for a stay. This argument is without merit. At the beginning of the February 15, 2023 hearing on Woods's damages claim, the trial judge specifically told Woods that because she had vacated the magistrate's earlier decision regarding the damages claim, "previous testimony isn't going to count because we're starting new. So anything you want me

to know, you have to tell me today." (Tr. 8-9.) When Woods asked the judge if he could refer to something that had happened earlier in the case, the judge told him, "No, because I'm not going to go back and refer to it. It doesn't exist. The case starts over." (Tr. 9.) Woods told the judge that he understood her ruling but then asked "What about if it was in a pretrial, though?" *Id.* The judge responded, "It's not relevant." *Id.* Woods stated, "Okay. That's fine." *Id.*

{¶ 45} Thus, contrary to Woods's argument, Davis's alleged promise in an earlier hearing to pay the property taxes is irrelevant. Woods was on notice that in order to prevail on his claim for taxes against Davis, he had to present evidence other than Davis's alleged promise to prove by a preponderance of the evidence that Davis was responsible for paying those taxes after Woods purchased the property on December 27, 2021, and obtained title to the property in March 2022. Woods failed to do so. In fact, the evidence demonstrated that neither Davis nor MD3 owned the property during the time when Woods contends they should have paid taxes. Furthermore, as the trial court found, Woods presented no evidence that he was in a contractual relationship with Davis and MD3 that would have required them to pay his property taxes.

{¶ 46} With respect to Woods's alleged lost profits because he could not rent out the apartment until August 2022, after the Campbells vacated the property, Woods likewise failed to demonstrate by a preponderance of the evidence that Davis and MD3 were somehow responsible for his alleged lost profits. The evidence reflected that neither Davis nor MD3 owned the property when it was sold at

sheriff's sale and that neither Davis nor MD3 had a lease agreement with the Campbells. Furthermore, even if Davis and MD3 did have a lease agreement with the Campbells, Woods presented no evidence that he had a contractual relationship with them that would entitle him to lost profits.

{¶ 47} Accordingly, the fourth and fifth assignments of error are overruled. The sixth assignment of error, in which Woods contends that the trial court erred in determining he did not prove his damages claim by a preponderance of the evidence, is likewise overruled.

{¶ 48} In the seventh assignment of error, Woods contends that the trial court erred in denying his damages claim because the trial court should have considered his claim under a theory of unjust enrichment. Woods's argument is without merit. His complaint was for forcible entry and detainer and money damages, not unjust enrichment. Moreover, Woods made no claim for damages under a theory of unjust enrichment at any point in the proceedings. Accordingly, Woods's citation to *Estate of Neal v. White*, 1st Dist. Hamilton No. C-180579, 2019-Ohio-4280, in which the court found that even where there is no lease agreement, an owner of land may recover against an occupier based on the quasi-contract theory of unjust enrichment, is not on point. In *Estate of Neal*, the estate filed a forcible entry and detainer action against a tenant who would not leave its property, with claims for rent and property damage. *Id.* at ¶ 4. At trial on the damages issue, the estate specifically argued that although the evidence did not establish an award of damages against the former tenant based on an express or implied contract to pay

rent, it had established its right to remuneration for rent under a theory of unjust enrichment. *Id.* at ¶ 5. The appellate court agreed and found that the trial court had erred in concluding that the lack of a landlord-tenant relationship was fatal to the estate's claim for damages. *Id.* at ¶ 15.

{¶ 49} This case is not like *Estate of Neal*. The record reflects that Woods never made any argument in the trial court regarding his right to recover lost profits under a theory of unjust enrichment. It is axiomatic that an appellate court will not consider for the first time on appeal claims and arguments not raised in the trial court. The seventh assignment of error is therefore overruled.

### E. Cumulative Error

{¶ 50} In his eighth assignment of error, Woods contends that the trial court's judgment denying his damages claim was erroneous "pursuant to a cumulation of errors."

{¶ 51} "Under the cumulative error doctrine, 'a [judgment] will be reversed when the cumulative effect of errors in a trial deprives [a party] of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *Daniels v. Northcoast Anesthesia Providers, Inc.*, 8th Dist. Cuyahoga No. 105125, 2018-Ohio-3562, ¶ 66, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 321. The cumulative error doctrine applies in civil cases. *Id.*

{¶ 52} Having found no error in the trial court's decision, we find no cumulative error. The eighth assignment of error is overruled.

**{¶ 53}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR